IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Regina M. Rodriguez

Civil Action No. 1:23-cv-01476-RMR

D. W.,[1]

    Plaintiff,

v.

Commissioner, Social Security Administration,

    Defendant.

---

### ORDER

---

This civil action arises under XVI of the Social Security Act, 42 U.S.C. §§ 1381–83(c), for review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff D.W.'s application for Supplemental Security Income ("SSI"). For the reasons stated below, the Court **VACATES** and **REMANDS** the final decision of the Commissioner.

### I.    BACKGROUND

Plaintiff is a 33-year-old woman who alleges that she has been disabled since November 15, 2002, due primarily to mental impairments, including posttraumatic stress disorder ("PTSD") and epilepsy. *See* ECF No. 12–2 at 24 (Administrative Record)

---

[1] Pursuant to D.C.COLO.LAPR 5.2(b), this order identifies the Plaintiff by initials only.

[hereinafter R. at 23].[2] Plaintiff filed her application for SSI on November 8, 2018. R. at 23. An Administrative Law Judge ("ALJ") held an administrative hearing on August 11, 2022, at which Plaintiff and a vocational expert ("VE") appeared. *Id*. Plaintiff was not represented by an attorney. *Id*. On October 3, 2022, the ALJ issued a decision denying Plaintiff's applications for SSI. R. at 35.

The ALJ found four of Plaintiff's impairments "severe:"[3] seizure disorder, depressive disorder, anxiety disorder, and PTSD. R. at 19. The ALJ found that Plaintiff's seizure disorder did not meet the requirements of Listing 11.02 for epilepsy or any of the other listed impairments that automatically lead to a conclusion of disability. R. at 26; *see* 20 C.F.R. § 416.920(a)(4)(iii). After these findings, the ALJ determined that Plaintiff retained a residual functional capacity ("RFC") to perform a full range of work at all exertional levels. R. at 28. This RFC was subject to the following non-exertional limitations:

- She cannot perform a job that involves climbing ladders, ropes or scaffolds or work performed near unprotected heights or moving mechanical parts.
- She is able to understand, remember and perform simple tasks of 1-2 steps and to make simple, work-related decisions.
- She is able sustain attention and concentration for up to two hours at a time with routine breaks when performing simple tasks of 1-2 steps and to sustain the mental demands associated with performing simple tasks of 1-2 steps throughout an ordinary workday and workweek.

---

[2] When citing to the Administrative Record ("R."), the Court uses the page number found in the bottom right-hand corner of the page. For all other documents, the court cites to the document and page number generated by the Electronic Court Filing ("ECF") system.

[3] A "severe impairment" is one that significantly limits an individual's ability to perform basic physical or mental work activities. *See* 20 C.F.R. § 416.922(a).

2

- She is able to interact with supervisors as needed to receive work instructions, but the job should not involve over-the-shoulder type supervision.
- She is able to work in proximity to coworkers, but the job should not involve teamwork or other work where close communication or cooperation is needed in order to complete work tasks.
- She would work best in a setting with longer periods of solitary work where interaction with supervisors or co-workers is not required.
- The job should not involve interacting with the general public and the job should not involve more than ordinary and routine changes in work setting or work duties.
- She cannot work at a rapid production-rate pace [sic] or where she has hourly production quotas.

*Id*. The ALJ ultimately concluded that Plaintiff was not disabled because, with those RFC limitations, a person of Plaintiff's age, education, and work experience could perform jobs existing in significant numbers in the national economy. R. at 34–35. Based on the testimony of the VE, the ALJ identified the following representative occupations that Plaintiff could perform:

- Motel cleaner, light exertion level, SVP 2, DOT #323.687-014 with 192,700 jobs in the national economy
- Marker, light exertion level, SVP 2, DOT #209.587-034 with 131,000 jobs in the national economy
- Kitchen helper, medium exertion level, SVP 2, DOT #318.687-010 with 107,400 jobs in the national economy

R. at 35.

The Appeals Council denied Plaintiff's subsequent request for review on January 10, 2023, rendering the ALJ's decision the Commissioner's final decision for purposes of judicial review. R. at 1; *see also, e.g.*, *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003) ("The Appeals Council denied review, making the ALJ's decision the Commissioner's final decision for purposes of review."). This Court has jurisdiction to

review the agency's final decision under the Social Security Act (the "Act") pursuant to 42 U.S.C. § 405(g).

## II.    LEGAL STANDARDS

An individual is determined to be under a "disability," as defined in the Act, if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

> In determining whether an individual's physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility . . . , the Commissioner of Social Security shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity. If the Commissioner of Social Security does find a medically severe combination of impairments, the combined impact of the impairments shall be considered throughout the disability determination process.

*Id.* §§ 423(d)(2)(B), 1382c(a)(3)(G). Further, there is a "duration requirement" for the disabling impairment, that is, it must "ha[ve] lasted or can be expected to last for a continuous period of not less than twelve months." *Id.* §§ 423(d)(1)(A), 1382c(a)(3)(A); *Barnhart v. Walton*, 535 U.S. 212, 214–15 (2002) ("[T]he 'inability' (to engage in any substantial gainful activity) must last, or must be expected to last, for *at least 12 months*.") (emphasis in original); *see also* 20 C.F.R. §§ 404.1509, 416.905.

The Commissioner "has established a five-step sequential evaluation process for determining whether a claimant is disabled" under the Act. *Bowen v. Yuckert*, 482 U.S.

4

137, 140 (1987); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The process involves the following five inquiries:

1. Whether the claimant is "doing substantial gainful activity," 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i);

2. Whether the claimant has a "severe medically determinable physical or mental impairment that meets the duration requirement" or a "combination of impairments that is severe and meets the duration requirement," *id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii);

3. Whether the claimant has "an impairment(s) that meets or equals one of [the] listings in" Title 20, Chapter III, Part 404, Subpart P, Appendix 1 of the Code of Federal Regulations, and that "meets the duration requirement," *id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii);

4. Whether the claimant has the residual functional capacity ("RFC" or "residual functional capacity") to "do [his] past relevant work," *id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv); and

5. Whether, considering the claimant's RFC and his "age, education, and work experience," the claimant "can make an adjustment to other work," *id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), that "exists in significant numbers in the national economy," *id.* §§ 404.1560(c)(1)–(2), 416.960(c)(1)–(2).

*See also, e.g.*, *Williams v. Bowen*, 844 F.2d 748, 750–52 (10th Cir. 1988) (describing the five steps). "The claimant bears the burden of proof through step four of the analysis[,]" while "[a]t step five, the burden shifts to the [Commissioner] to show that a claimant can perform work that exists in the national economy." *Neilson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir. 1993). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Williams*, 844 F.2d at 750).

"Judicial review of the [Commissioner's] decision is limited to a determination whether his factual findings are supported by substantial evidence and whether he applied the correct legal standards." *Nguyen v. Shalala*, 43 F.3d 1400, 1402 (10th Cir.

5

1994). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005)). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). "[I]n making this determination, [the Court] cannot reweigh the evidence or substitute [its] judgment for the administrative law judge's." *Smith v. Colvin*, 821 F.3d 1264, 1266 (10th Cir. 2016).

### III.   ANALYSIS

Plaintiff raises two objections to the ALJ's decision: (1) the ALJ committed error by failing to resolve conflicts between the VE testimony regarding occupations Plaintiff could perform and the Dictionary of Occupational Titles ("DOT"); and (2) the ALJ lacked authority because he was not legally appointed. ECF No. 13 at 4. The Court agrees with Plaintiff's first objection and does not reach the second issue.

### A.   The ALJ Failed to Resolve Conflicts Between the VE Testimony and DOT Descriptions.

The Social Security Administration uses the DOT, along with certain other publications and VE testimony, to determine functional demands and job duties of potential occupations. *Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999). This information from the DOT can be used as an authoritative source at step four and five of the sequential evaluation process to determine whether an occupation is within a claimant's RFC. *Id*. "Determining the functional demands and job duties of specific jobs

6

and matching those requirements to a claimant's limitations is the very task the ALJ must undertake at step five." *Id*. (internal quotation marks omitted).

The Tenth Circuit has held that the ALJ "must investigate and elicit a reasonable explanation for any conflict between the Dictionary and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability." *Haddock*, 196 F.3d at 1091; *see also* SSR 00 –4p, 2000 WL 1898704, at *4 (Dec. 4, 2000). Failure to resolve a conflict is reversible error, except where the error is harmless. *Poppa v. Astrue*, 569 F.3d 1167, 1173–74 (10th Cir. 2009).

Plaintiff argues that there is an apparent conflict between the VE testimony and the DOT for all three of the representative occupations identified by the VE and relied on by the ALJ. For the occupations of marker and kitchen helper, Plaintiff argues that there is an apparent conflict between Plaintiff's RFC limitation to "simple tasks of 1-2 steps" and the DOT's classification of these occupations as having a general educational development ("GED") reasoning level two. ECF No. 13 at 13–14. For motel cleaner, Plaintiff argues that the conflict is between Plaintiff's RFC restriction on "interacting with the general public" and the DOT's description that the occupation involves rendering personal assistance to patrons. *Id*. at 14–15. The Court agrees.

1. **Marker and Kitchen Helper Conflict with Plaintiff's GED Reasoning Level.**

As Plaintiff argues, the corresponding listings identified by the ALJ for the marker and kitchen helper each indicate that the occupation is performed at a GED reasoning level two. *Merchandise Marker*, DOT, 209.587–034, 1991 WL 671802; *Kitchen Helper*, DOT, 318.687–010, 1991 WL 672755. The GED reasoning levels require increasingly

7

more ability as the level increases. DOT, app. C., sec. III, 1991 WL 688702. The DOT defines GED reasoning level two as requiring a worker to apply "commonsense understanding to carry out detailed but uninvolved written or oral instructions [and d]eal with problems involving a few concrete variables on or from standardized situations." *Id*. In contrast, GED reasoning level one requires only applying "commonsense understanding to carry out simple one- or two-step instructions." *Id*. The RFC here, which limits Plaintiff to "simple tasks of 1-2 steps" in multiple places, unambiguously corresponds to GED reasoning level one and would conflict with higher levels. Accordingly, there is an apparent conflict between the DOT and the VE testimony that an individual with Plaintiff's RFC could perform these occupations. *Stanton v. Comm'r*, 899 F.3d 555, 558–59 (8th Cir. 2018); *Henderson v Colvin*, 643 F. App'x 273, 277 (4th Cir. 2016); *Rounds v. Comm'r.*, 807 F.3d 996, 1004 (9th Cir. 2015). Thus, there is not substantial evidence that Plaintiff could perform these occupations because the conflict between the VE's testimony and the DOT was not resolved by the ALJ. *Haddock*, 196 F.3d at 1091.

### 2. Motel Cleaner Conflicts with Plaintiff's Public Interaction Restrictions.

Whether there is an apparent conflict regarding the motel cleaner occupation is a closer question. The DOT describes the corresponding occupation as:

8

> Cleans rooms and halls in commercial establishments, such as hotels, restaurants, clubs, beauty parlors, and dormitories, performing any combination of following duties: Sorts, counts, folds, marks, or carries linens. Makes beds. Replenishes supplies, such as drinking glasses and writing supplies. Checks wraps and **renders personal assistance to patrons**. Moves furniture, hangs drapes, and rolls carpets. Performs other duties as described under CLEANER (any industry) I Master Title. May be designated according to type of establishment cleaned as Beauty Parlor Cleaner (personal ser.); Motel Cleaner (hotel & rest.); or according to area cleaned as Sleeping Room Cleaner (hotel & rest.).

DOT, 323.687–014 Cleaner, Housekeeping, 1991 WL 672783 (emphasis added).

Plaintiff argues that there is an apparent conflict between the DOT's description of rendering personal assistance and the RFC limiting her to jobs that do not involve interacting with the general public. ECF No. 13 at 14–15. Plaintiff argues that rendering personal assistance to patrons necessarily involves interaction with the general public. *Id.*

The Commissioner responds that there is nothing in the DOT definition that requires interaction with the general public and, therefore, no conflict. ECF No. 15 at 6. In the Commissioner's view, a worker can render personal assistance by, for example, changing sheets without any personal interaction. *Id*. at 7. Additionally, the DOT description lists the activities of talking and hearing as not present as well as defining the occupation as having the lowest level of public interaction that exists in the labor force. *Id*. at 7–8 (citing *Lane v. Colvin*, 643 F. App'x 766, 770 n.1 (10th Cir. 2016)). The Commissioner also notes that the VE gave his testimony that Plaintiff could perform the role of motel cleaner after the ALJ presented a hypothetical specifically drawing attention to the limitation on interaction with the general public. *Id*. at 6.

9

The Court finds persuasive the case *Tainter v. Kijakazi*, No. 1:20-CV-01770-GSA, 2023 WL 1767736 (E.D. Cal. Feb. 3, 2023), discussed by Plaintiff. That case presented essentially the same issue, with the claimant arguing that there was a conflict between the same DOT definition and an RFC limiting her to "minimal to no direct contact with the public." *Id*. at *8. The *Tainter* court rejected the Commissioner's similar technical arguments that the DOT definition did not explicitly require public interaction, reasoning in part that:

> based on common sense experience some of the other tasks listed (making beds, replenishing supplies) at a minimum involve some incidental public interaction even if the interaction is limited to a knock at the door followed by a request for housekeeping to return later (though this would seemingly be limited to the hotel/motel context, whereas the job description states it could apply in other establishments as well).

*Id*. at *9. It is common knowledge and experience that motel cleaners interact with patrons, even if those interactions are limited to, for example, requests for new towels. In this way, which involves interaction with the public, a motel cleaner "renders personal assistance to patrons" through talking with patrons. The Commissioner's argument that the cleaner role has the lowest level of interaction of jobs in the labor force is not well taken. The ultimate question here is whether Plaintiff can work in the labor force, which necessarily depends on the possibility that there are no suitable occupations for Plaintiff. *See* 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). The record contains extensive evidence that Plaintiff's seizure disorder is triggered by stress and that public interactions are particularly stressful for Plaintiff in relation to her PTSD symptoms. *See, e.g.*, R. at 29, 31, 54, 56–57, 1304–07. The ALJ credited this evidence in restricting Plaintiff's interaction with the general public. *Id*. at 32, 33 ("I find the medical evidence supports greater

limitations regarding supervision and stress-causing events due to the claimant's issues with stress as noted by Dr. Rippy."). It was reversible error for the ALJ to fail to resolve the apparent conflict between the DOT and the VE testimony that Plaintiff could perform this occupation. *See Haddock*, 196 F.3d at 1091.

This conflict was not harmless or resolved by the VE testimony. The Commissioner is correct that that the ALJ highlighted the public interaction limitation by making it the difference between hypotheticals presented to the VE. *See* R. at 62, 64. Nonetheless, the VE merely responded in conclusory fashion that his testimony was consistent with the DOT. *See id*. at 64. This is insufficient where there is an apparent conflict. *Haddock*, 196 F.3d at 1090 ("To allow an ALJ to elicit and rely on summary conclusions given by a VE, in the absence of contrary testimony elicited by the claimant through cross-examination, would amount to shifting the burden to produce and develop vocational evidence back to the claimant.") (citing *Thompson v. Sullivan*, 987 F.2d 1482, 1491 (10th Cir. 1993)).[4] Accordingly, the Court will vacate the decision of the ALJ and remand for further proceedings. *Poppa*, 569 F.3d at 1173–74.[5]

---

[4] Although not raised by the Plaintiff on appeal, there is an additional apparent conflict that should be considered if the ALJ relies on the motel cleaner occupation and the same RFC on remand. Plaintiff testified that motel cleaners are often subject to quotas and the ALJ accepted this testimony into the record. R. at 66 ("I've seen them fixate on a certain amount of rooms that they have to get and a certain amount of hours that they have to get done or it goes against them."). Plaintiff's RFC states that "[s]he cannot work at a rapid production-rate pace or where she has hourly production quotas." R. at 28.

[5] The Court does not address Plaintiff's argument regarding whether the ALJ was properly appointed because the remedy would be the same and it may be resolved by the treatment on remand. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

## IV.   CONCLUSION

For the reasons set forth herein, the Court VACATES the final decision of the Commissioner and REMANDS for further proceedings consistent with this order.

DATED: March 29, 2024

BY THE COURT:

_____
REGINA M. RODRIGUEZ
United States District Judge